GEORGE HEATON, Appellee, v. A. D. CLARK & COMPANY, Appellant.

Brokerage: COMMISSIONS. Plaintiff entered into a contract with
1    the owner of real estate to secure purchasers at a stated commission. A purchaser of the lands agreed as part of the consideration to pay all commissions earned and thereafter organized defendant company, which, with knowledge of plaintiff's contract, assumed all obligation of such purchaser and continued to receive applications from him. *Held*, that defendant company was liable to plaintiff for commissions at the rate fixed in the original contract.

Same. Refusal of an owner to make a contract for the sale of land
2    will not defeat an agent's recovery of commission where he has performed his part of the contract therefor. Evidence held sufficient to entitle the agent to his commission.

*Appeal from Dallas District Court.*—HON. A. W. WILKIN-
SON, Judge.

THURSDAY, FEBRUARY 11, 1904.

ACTION at law to recover commissions for the sale of
real estate. The case was tried to the court, a jury being
waived, resulting in a judgment for plaintiff, and defend-
ant appeals.—*Affirmed.*

*Filkins & Schaffter* for appellant.

*Shortley & Harpell* for appellee.

DEEMER, C. J.—Plaintiff is a real estate broker, with
his principal office at Perry, in this state. Prior to October,
1901, he was engaged in soliciting sales and procuring pur-
chasers for land in North Dakota belonging
to the Northwestern Improvement Company,
under a contract whereby he was to receive seven and one-
half per cent. commission upon all sales made to purchasers
on applications secured by him. In August, 1901, one A.
D. Clarke purchased a large tract of land belonging to said
improvement company, and, as a part consideration therefor,
agreed to pay all commissions earned by plaintiff on
applications sent in by him. Clarke received all the money
paid on these applications, and had knowledge of the terms
of the contract between plaintiff and the improvement com-
pany. On or about October 18, 1901, Clarke organized and
promoted the defendant, which is a corporation formed under
the laws of this state. The defendant received the applica-
tions taken by plaintiff, and the money paid thereon. There
is a dispute in the evidence regarding the arrangement be-
tween Clarke and his corporation with reference to these ap-
plications. Defendant contends that, when it took the appli-
cations and received the money, it did so under an agreement
with Clarke that it should only be responsible to plaintiff for
five per cent. commission; and Clarke says that while he
owned the lands and about August 19th, he had an arrange-

*1. BROKERAGE:*
*commissions.*

ment with plaintiff whereby he (plaintiff) was to receive but five per cent. commission for securing purchasers for the lands. Defendant had paid plaintiff five per cent. commission on all land contracts secured by him, except one to be hereafter denominated as the "Macomber contract," but plaintiff insists that he is entitled to two and one-half per cent. more. Plaintiff denies making any new arrangement with Clarke after he (Clarke) received his option on the lands and asserts that defendant, corporation adopted and assumed all obligations of said A. D. Clarke. There is no doubt that the improvement company agreed to pay plaintiff seven and one-half per cent. commission for securing purchasers for its lands; and there is no conflict in the evidence regarding the number of applications secured by him, save as to the Macomber tract, to which we shall hereinafter refer. Defendant Clarke entered into a contract with the improvement company when he secured his option on the lands, and the defendant also entered into a written contract with Clarke after it was organized. These contracts expressly provide that Clarke and the defendants shall pay all commissions due or payable to any agents who received or forwarded applications under the agreement of the said improvement company and its said agents. This makes a *prima facie* case for plaintiff. But Clarke contends that after he secured his option on the lands he made a special agreement with plaintiff whereby he (plaintiff) was to receive but five per cent. commission. The district court was justified in finding, however, that there was no modification of the contract, and that whatever was said between these parties had reference to applications received by plaintiff after October 1, 1901. It is not enough for defendant to show that the evidence preponderates in favor of another conclusion. This is a law case, tried to the court, and its findings have the same force and effect as the verdict of a jury. The applications were taken before Clarke finally closed his contract, and plaintiff is undoubtedly entitled to two and one-half per cent. commission on all applica-

tions received by him, except, perhaps, on the Macomber contract. We do not overlook defendant's claim that when it took over Clarke's option it agreed to pay but five per cent. commission to the agents. There is ample evidence to show that defendant accepted and received the applications secured by plaintiff, and that it did so under an agreement to pay all commissions earned by him. In other words, it was to pay whatever commission Clarke was individually liable for under his contract with the improvement company. Moreover, defendant Clarke knew of the arrangements between plaintiff and the improvement company, and both he and the defendant corporation accepted the benefits of the applications secured by plaintiff.

II. As to the Macomber contract: Plaintiff sold to Macomber one section of land known as 25, and three-quarters in another section known as 35, and received from him the cash payment required. The application, with the money, was turned over to the defendant. The application did not specifically name the land in section 35, but the cash payment and some other matters appearing on the face thereof clearly indicated that more than one section was to be included. Before the defendant applied the money, it received word from Macomber that his purchase was not only of section 25, but of three-quarters in section 35, and that a mistake had been made in the application. Defendant returned part of the cash payment to Macomber, and refused to complete the sale of the land in section 35. Macomber was ready, able, and willing to take the land actually sold him by plaintiff; and defendant still held the land at the time it was notified by Macomber that a mistake had been made in his application, and that he had in fact purchased the land in section 35 from the plaintiff. Plaintiff therefore did all that was required of him to earn his commission, and defendant was alone responsible for Macomber's failure to get the land. Under such circumstances, the agent is entitled to his commission. Defendant refers to a number of cases bearing on the question of the liability

2. SAME.

of a corporation on contracts made by its promoters. There is no need of going into this question, for we find that the judgment may be supported on another theory. The trial court found that there was no new arrangement between plaintiff and Clarke after Clarke became , interested in the land, and also found that defendant expressly agreed to pay all commissions earned by plaintiff under his prior contract with the improvement company. Under such circumstances, plaintiff is entitled to recover, no matter what representations Clarke may have made to the organizers of the corporation. It became bound to plaintiff under its contracts, and, having received the benefit of plaintiff's services, it cannot now repudiate its cantract, on the theory that it was misled by Clarke, who, it seems, had no authority to make any representations for and on behalf of the plaintiff. ·

The findings of the trial court have support in the evidence, and its judgment is AFFIRMED.